# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 5:18-cv-02591-PA-KES | Date: January 8, 2019 |

Title: JEREMY M. KASHKARI v. RIVERSIDE COUNTY SHERIFF'S DEPT., et al.

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

| PROCEEDINGS (IN CHAMBERS): | Order Dismissing Complaint (Dkt. 1) with Leave to Amend |
|---|---|

## I.  INTRODUCTION.

Jeremy M. Kashkari ("Plaintiff"), a prisoner in state custody, has filed a civil rights action under 42 U.S.C. § 1983 against the Riverside County Sheriff's Department ("RCSD") and several of its employees arising out of his alleged assault by other inmates in a transport van. (Dkt. 1 ["Complaint"].)[1]

The Complaint names four Defendants in their official and individual capacities: (1) RCSD, (2) Riverside County Sheriff Stanley Sniff, (3) Riverside County Sheriff Deputy Chappell, and (4) Riverside County Sheriff Deputy John Doe #1. (Complaint at 3-4.) Plaintiff alleges Defendants (1) subjected him to cruel and unusual punishment in violation of the Eighth Amendment by failing to protect him from the other inmates, and (2) engaged in "general negligence." (Id. at 5.)

Under 28 U.S.C. § 1915A(a), the Court must screen any "complaint in a civil action in which a prisoner seeks redress from a governmental entity, or from an officer or employee of a governmental entity." The Court must dismiss the complaint if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a

---

[1] When citing to the Complaint, the Court will refer to the pagination imposed by the Court's e-filing system, CM/ECF.

defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court has screened Plaintiff's Complaint and finds that it fails to state a claim for relief against some of the Defendants, as explained further below.

## II.    STANDARD OF REVIEW.

A complaint may fail to state a claim for two reasons: (1) lack of cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (as amended). In determining whether a complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

Further, where the plaintiff is appearing pro se, the court must construe the allegations of the complaint liberally and must afford the plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, the liberal pleading standard only applies to a plaintiff's factual allegations. "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …. Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citations omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

## III.    SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS.

On September 1, 2018, Plaintiff was arrested and placed into RCSD's custody as a pretrial detainee at the Banning Jail. (Complaint at 11.) He was classified as a "protective custody inmate due to being a gang dropout," and he was housed in the jail's protective custody unit. (Id.)

On October 2, 2018, Plaintiff was sentenced to six years imprisonment. (Id.) On October 7, 2018, staff at the Banning Jail prepared to transfer Plaintiff to a state prison. Plaintiff was taken from the protective custody unit to the "designated secured transport cages," along with two other inmates in protective custody. (Id.) Defendant Chappell participated in loading the transport bus. (Id. at 12.) He unlocked the transport cages, obtained from Plaintiff and the two other protective custody inmates their names, and directed all three men to proceed to the bus. (Id.)

The bus had two caged-off areas. (Id.) When Plaintiff entered the bus, he saw "several other inmates" already seated in the second area, so he and the other two inmates sat in the first area. (Id. at 12-13.) Upon seeing this, Defendant John Doe #1 directed all three men to "stand back up and to proceed to the next section where the unknown inmates currently sat." (Id. at 13.) They did so, at which point Defendant John Doe #1 "locked the doors and exited the bus," leaving the inmates unattended. (Id.)

The unknown inmates asked Plaintiff if he was "active," and he told them, "no." (Id.) They assaulted him until Defendant John Doe #1 returned and pulled all three protective custody inmates from the bus. (Id.) Defendant Chapppell questioned Plaintiff about what happened. (Id.) Plaintiff responded, "What do you think happened?" and refused offered medical attention. (Id.) Plaintiff and the other two inmates re-boarded the bus, but this time they sat in the first caged section. (Id.)

When they arrived at the Robert Presley Jail, Plaintiff and the two other protective custody inmates were placed in a protective custody holding cell. (Id.) Defendant Chappell later pulled Plaintiff from that cell to obtain a formal statement about the incident. (Id. at 14.) Defendant Chappell allegedly told Plaintiff, "We messed up. It's all audio and video recorded." (Id.) Plaintiff requested to press criminal charges against his attackers. (Id.) Defendant Chappell photographed Plaintiff's injuries and then had him taken to the jail's medical facility where he received treatment for his injuries: "face (swelling), neck (strain) and back (bruising, pain)." (Id.)

On October 9, 2018, Plaintiff was transferred to Wasco State Prison "in a secured section of the bus" without incident. (Id.) At Wasco, he was classified as a sensitive needs yard ("SNY") inmate. (Id.)

On October 30, 2018, two Riverside County officers came to Wasco to interview Plaintiff. The 30-minute interview was audio recorded. They told him that they were conducting an "administrative review of the incident, including the actions of Defendant Deputy Chappell and Deputy John Doe #1." (Id.)

On November 13, 2018, Plaintiff was seen by Wasco medical staff due to complaints of lower back and neck pain stemming from the assault. (Id.)

As remedies, Plaintiff requests monetary compensation (including payment for future medical expenses) and a court order placing "all defendants" on administrative leave with no pay while they are retrained in "proper transportation procedure." (Id. at 15.)

## IV.  DISCUSSION.

### A.  <u>Eighth Amendment Claims for Failure to Protect.</u>

#### 1.  Legal Elements.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, (1994). To violate the Eighth Amendment, the deprivation alleged must objectively be sufficiently serious; and the prison official must subjectively have a sufficiently culpable state of mind, i.e., deliberate indifference to inmate safety. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A correctional officer disregards a risk by "failing to take reasonable measures to abate it." Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir. 2009).

#### 2.  Allegations Against Each Defendant in His Individual Capacity.

Plaintiff alleges that Defendants Chappell and John Doe #1 knew he was classified as a protective custody inmate and at risk of being assaulted if placed with general population inmates. (Complaint at 10.) Plaintiff alleges that Defendant John Doe #1 disregarded that risk by directing plaintiff to sit with general population inmates on the transport bus. Plaintiff does not allege any facts showing that Defendant Chappell played any role in directing Plaintiff to sit in the second caged area of the transport bus rather than the first. He does not allege that Defendant Chappell was present when John Doe #1 directed Plaintiff to join the general population inmates on the bus. Plaintiff alleges cryptically that Defendant Chappell "allowed Plaintiff" to be placed with the general population inmates (id. at 5), but this allegation is insufficient to show Defendant Chappell's participation without facts describing where Defendant Chappell was when John Doe #1 directed Plaintiff to join the general population inmates, and based on his location, what he could see, what he could hear, etc.

Plaintiff alleges that Defendant Sniff is liable for his injuries because, as the County Sheriff, he is ultimately responsible for the training of all Sheriff's deputies, and he failed to train Defendants Chappell and John Doe #1 how to transport protective custody inmates safely. (Complaint at 5, 7.)

A supervisor like Defendant Sniff may be individually liable under § 1983 for failing to train subordinates when the failure to train amounts to deliberate indifference. Canell v.

Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989). To establish liability on a failure to train theory, the plaintiff must show that, "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor] … can reasonably be said to have been deliberately indifferent to the need." Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting Canton, 489 U.S. at 389). A plaintiff must allege facts showing the failure to train resulted from a defendant's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. Canell, 143 F.3d at 1213 (citation omitted). To show that a failure to train amounts to deliberate indifference, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees." Connick v. Thompson, 563 U.S. 51, 62 (2011).

Here, Plaintiff does not allege that RCSD has routinely or repeatedly transported protective custody inmates with general population inmates, in contravention of its own policies. To the contrary, he alleges that when Defendant Chappell realized what had happened, he told Plaintiff, "We messed up." (Complaint at 14.) This shows that Defendant Chappell knew protective custody inmates were not supposed to be seated with general population inmates, and that Plaintiff's placement with the general population inmates resulted from a mistake, not a lack of training that caused deputies to be ignorant of RCSD policy.

### 3. Allegations Against RCSD and Each Defendant in His Official Capacity.

Section 1983 suits against local government entities alleging constitutional rights violations by government officials cannot rely solely on *respondeat superior* liability. Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, plaintiffs must establish that "the local government 'had a deliberate policy, custom, or practice that was the "moving force" behind the constitutional violation [they] suffered.'" Whitaker, 486 F.3d at 581 (quoting Galen v. City of L.A., 477 F.3d 652, 667 (9th Cir. 2007)). Official capacity claims for damages against public employees are treated as claims against the public employer under § 1983. Monell, 436 U.S. at 690. Thus, such official capacity claims must also be supported with allegations identifying a "policy, custom, or practice" of the public agency for which the defendant sued in his/her official capacity works. "Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom." Thompson v. Los Angeles, 885 F.2d 1439, 1443-1444 (9th Cir. 1989), overruled on other grounds in Bull v. City & Cty. of San Francisco, 595 F.3d 964, 981 (9th Cir. 2010).

Plaintiff alleges, "It is the policy of the Riverside County Jail/Sheriff's Department not to mix the protective custody (PC) classified inmates with the general population (GP) in order to prevent or greatly reduce the risk of conflict or great bodily injuries to inmates, as in the Plaintiff's case." (Complaint at 8 and 9.) Thus, Plaintiff acknowledges that his placement with the general population inmates on the transport bus was not done *pursuant* to a RCSD policy, but

rather was done in *violation* of a RCSD policy. This pleading admission is fatal to his Monell claim against RCSD and his "official capacity" claims against the individual Defendants.

"[I]nadequacy of police training may serve as the basis for § 1983 liability [against a city or county] only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." Canton, 489 U.S. at 388. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389. To show that a municipality pursued a "policy" of inadequate training requires evidence "that the inadequacies resulted from conscious choice — that is, proof that the policymakers deliberately chose a training program which would prove inadequate." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). "[A]bsent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant — a much lower standard of fault than deliberate indifference.'" Blankenhorn v. City of Orange, 485 F.3d 463, 484-485 (9th Cir. 2007) (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)).

Plaintiff fails to allege any facts suggesting program-wide inadequacy in training. To the contrary, as discussed above, Plaintiff's allegation that Defendant Chappell told him, "We messed up," shows that Defendant Chappell knew protective custody inmates were not to be transported with general population inmates. At best, the Complaint raises an inference that John Doe #1 may have been inadequately trained regarding transport procedures, but this is insufficient to state a claim against the RCSD.

### B. Negligence.

Plaintiff's negligence claims sound in state tort law, not federal law.

Before filing a tort action against certain public entities or employees, a plaintiff must file a government claim pursuant to the California Government Claims Act. Cal. Gov't Code § 810 et seq. A "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004). The "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." Id.

Here, Plaintiff fails to allege that he ever presented a government claim pursuant to the California Government Claims Act.

Although a public entity may be vicariously liable for certain acts and omissions of its employees (Gov. Code § 815.2), that rule does *not* apply in the case of injuries to prisoners. Government Code section 844.6(a) states that with certain statutory exceptions, "a public entity

is not liable for: [¶] … [¶] (2) An injury to any prisoner." This immunity expressly applies only to public entities, not public employees. Plaintiff's tort claims against RCSD appear barred by this statutory immunity.

## V.	CONCLUSION

The Court finds that the Complaint does not state a negligence claim against any Defendant and does not state a § 1983 claim against RCSD, Defendant Sniff, or Defendant Chappell.

IT IS THEREFORE ORDERED that the above-identified insufficient claims in the Complaint (Dkt. 1) are DISMISSED WITHOUT PREJUDICE and with leave to amend. Plaintiff has until **January 28, 2019** to file a First Amended Complaint that corrects, if Plaintiff can, the deficiencies identified in this Order, or omits those Defendants against whom Plaintiff determines he cannot state a claim.

The First Amended Complaint should bear the docket number assigned to this case (5:18-cv-02591-PA-KES), be labeled "First Amended Complaint," and be complete in and of itself without needing to refer to the original Complaint or any other documents (except any documents that Plaintiff may choose to attach to the First Amended Complaint as exhibits).

Alternatively, instead of filing a First Amended Complaint, Plaintiff may voluntarily dismiss the above-identified insufficient claims pursuant to Federal Rule of Civil Procedure 41 and proceed only on his § 1983 claim against Defendant John Doe #1. If Plaintiff does so, then the Court will authorize service of a subpoena on the RCSD to identify John Doe #1.

The Clerk is directed to provide Plaintiff with a copy of Form CV-066 for filing federal civil rights complaints, as well as a copy of Form CV-09 for voluntarily dismissing claims under Federal Rule of Civil Procedure 41. The Clerk shall also provide Plaintiff with a blank subpoena form.

Initials of Deputy Clerk JD